IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 4:22-cv-15

ANDREW INGLE, )
    Plaintiff )
)
vs. )
) **COMPLAINT**
) *(ADA Discrimination and Retaliation)*
CELLCO PARTNERSHIP d/b/a VERIZON )
WIRELESS, )
    Defendant. )

NOW COMES Plaintiff Andrew Ingle, by and through the undersigned counsel of record, complaining of Defendant Cellco Partnership D/B/A Verizon Wireless, and hereby alleges and says unto this Court:

## NATURE OF THE ACTION

This is an action under the Title I of the Americans with Disabilities Act of 1990 which prohibits discrimination based on disability. Title I of the American's with Disabilities Act (hereinafter "ADA") of 1990 also provides protection from retaliation by an employer based on filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or litigation under the ADA. Plaintiff Andrew Ingle, (hereinafter "Plaintiff"), brings this action to remedy discriminatory employment practices of his employer, Cellco Partnership D/B/A Verizon Wireless (hereinafter "Defendant" or "Verizon"). Plaintiff alleges Defendant took adverse action against Plaintiff's employment based on his disability. This Complaint sets out in detail the relevant instances of unlawful discrimination perpetrated by Defendant.

## PARTIES

1. Plaintiff is a United States citizen and was employed by Defendant as a General Manager located at 276 Butler Road, Forest City, North Carolina 28043.
2. At all times relevant herein, Plaintiff is a citizen and resident of North Carolina.
3. At all times relevant herein, Plaintiff was an employee of Defendant within the

meaning of 42 U.S.C. § 12111(4).

4. At all times relevant herein, Defendant was an employer of Plaintiff within the meaning of 42 U.S.C. § 12111(5).

5. Defendant is a communication technology company doing business in North Carolina as "Verizon Wireless" and is owned by Cellco Partnership, a Corporation organized under the laws of the State of Delaware. Defendant has multiple locations throughout the State of North Carolina.

6. Defendant is subject to the jurisdiction of this court as they purposely availed themselves of conducting business activities within the State of North Carolina. Defendant regularly conducts business and employs citizens of the State of North Carolina an thereby meets the minimum contacts standard set forth in *International Shoe Co. v. Washington*. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 744 (1984); 326 U.S. 310, 315 (1945)).

## FACTUAL ALLEGATIONS

7. Plaintiff was employed by Defendant as a temporary employee in July 2010 and became a full-time employee on October 25, 2010. Plaintiff was promoted to General Manager in December 2018.

8. Plaintiff was diagnosed with irritable bowel syndrome[1] (hereinafter "IBS") on July 4, 2018.

9. Upon receiving the diagnosis, Plaintiff informed his district manager Billie Walker and fellow employees in the Charlotte West District of his medical condition, and that Plaintiff's disability would require frequent and sudden bathroom breaks requiring Plaintiff to be away from the sales floor of the store.

10. Verizon's human resources department was informed of Plaintiff's disability and IBS diagnosis.

11. In approximately February 2021, Plaintiff was transferred to Verizon's Asheville district under management of District Manager Kristy Kluge.

---

[1] "Irritable Bowel Syndrome is a medical condition affecting the large intestine with symptoms that vary in severity and can cause intestinal damage in some cases." https://www.healthline.com/health/irritable-bowel-syndrome#what-is-ibs

12. During Plaintiff's time in the Asheville District, Plaintiff was meeting employment expectations based on his last performance review conducted by district manager Kristy Kluge which occurred approximately February or March 2021.
13. On May 26, 2021, Plaintiff was informed by fellow employee Wes Lawter that Assistant Managers Justin Covil and Brittany Clement had given employees the phone number for Human Resources requesting they call and discuss Plaintiff's performance with the department as part of an investigation into his time being off the sales floor.
14. On May 27, 2021, Plaintiff was approached by employee Shawn Scruggs who told Plaintiff he had spoken with Human Resources. Shawn Scruggs confirmed Human Resources was investigating Plaintiff's frequent bathroom breaks.
15. On May 27, 2021, employee James Mullis who was absent from the store the previous day, also informed Plaintiff that Human Resources were speaking to employees about Plaintiff's performance. Jame Mullis confirmed he had been given the contact number for Human Resources to participate in the investigation.
16. On May 27, 2021, employee Wes Lawter informed Plaintiff that his wife Maribeth Lawter, District Manager in the West Greenville District was contacted by district manager Kristy Kluge regarding Plaintiff's frequent bathroom usage.
17. Upon information and belief, Kristy Kluge asked Maribeth Lawter for advice on how to handle complaints brought forth by assistant managers Justin Covil and Brittany Clement regarding Plaintiff's time spent off the sales floor.
18. On May 28, 2021, at approximately 8:30 am, employee Kenny Blackmon called Plaintiff and stated he did not want to report to work because he did not agree with how Verizon was treating Plaintiff and the tension Human Resources' investigation into Plaintiff was causing in the store.
19. Later on the day of May 28, 2021, Plaintiff received and email and text message invite to join a meeting with Human Resource business partner Catherine Altmann and Kristy Kluge.
20. During the meeting, Plaintiff was questioned whether he had spoken with any employees about the investigation and that he could face termination if he had done so.
21. Plaintiff informed Catherine Altmann and Kristy Kluge that he was approached directly by employees and confirmed that he did not request for any employee to speak on his

behalf.

22. Plaintiff informed Catherine Altman and Kristy Kluge that he believed the investigation into his bathroom breaks was discriminatory as he has IBS and that Plaintiff's fellow employees and human resources were aware of his condition.
23. Catherine Altman advised Plaintiff that there was no investigation occurring, and instead was a check up on the store.
24. Directly following Plaintiff's meeting with Catherine Altmann and Kristy Kluge, Plaintiff was suspended until June 12, 2021.
25. Plaintiff was provided a Workplace Arrangement Request by Catherine Altman to formally request additional break time based on his disability.
26. During his suspension, Plaintiff filed a complaint with the Equal Opportunity Employment Commission (hereinafter "EEOC") alleging discrimination based on Defendant's human resources investigation.
27. Shortly after filing the EEOC complaint, employee Kenney Blackmon informed Plaintiff that he overhead management looking into how to terminate Plaintiff for filing the EEOC complaint.
28. On June 11, 2021, Plaintiff had a call with Catherine Altman and Kristy Kluge to discuss Verizon's decision regarding the investigation.
29. Plaintiff recorded this phone call as Plaintiff felt he was being subjected to discrimination and potential retaliation by Defendant.
30. During the phone call, Plaintiff was given a Final Written Warning for interfering with an investigation and alleged dishonesty with human resources and management about his alleged interference.
31. Plaintiff explained he disagreed with this decision and believed the investigation was discriminatory.
32. On July 12, 2021, Plaintiff's Workplace Arrangement Request was approved. Under this arrangement, Plaintiff was allotted thirty (30) minutes of additional unpaid break time to use during the day. If the additional time was utilized, Plaintiff was requested to make it up during the week if able to do so.
33. Plaintiff's Workplace Arrangement accommodation was put in place for ninety (90) days.

34. On August 24, 2021, Plaintiff was escorted into a virtual meeting with Wanda Mathis of employee relations, Bruno Pavlick of corporate security, and another woman with Verizon corporate security. Plaintiff was informed that recording the call from June 11, 2021, was against Verizon's code of conduct. Plaintiff informed Mathis and Pavlick he only recorded the phone call because he believed he was being subjected to unlawful discrimination.
35. After the meeting, Plaintiff was sent home without pay until August 26, 2021. Subsequently, on August 26, 2021, Plaintiff's employment with Defendant was terminated.
36. On November 22, 2021, Plaintiff received a Notice of Right to Sue Letter from the EEOC. (See attached as "Exhibit 1 – Notice of Right to Sue").

## FIRST CAUSE OF ACTION
(*Disability Discrimination*)

37. The allegations set forth in paragraphs one through thirty-five are realleged and incorporated by reference as if fully set forth herein.
38. To establish a claim under the ADA, a Plaintiff must establish "that (1) []he is within the ADA's protected class, (2), []he suffered adverse employment action, (3) at the time of the adverse employ action, []he was performing [his] job at a level that met [his] employer's legitimate expectations, and (4) the adverse employment action occurred under circumstances giving rise to a reasonable inference of unlawful discrimination." 42 U.S.C. § 12101 et seq.
39. The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(a).
40. For purposes of the ADA definition of disability, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working…major life activities also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. §

12101(2)(a),(b).

41. Plaintiff is disabled under the ADA's definition of disability, as he suffers from IBS. This impairment directly affects Plaintiff's digestive system and impacts his ability to perform manual tasks, eat, sleep, or concentrate as symptoms cause frequent and sudden bowel movements.
42. Defendant was aware of Plaintiff's disability as he identified that his disability to management, human resources, and several employees shortly after he was diagnosed.
43. Plaintiff was performing his job adequately as referenced by Plaintiff's latest performance review conducted by Kristy Kluge in approximately February or March of 2021.
44. Defendant provided Plaintiff with a Workplace Arrangement Request which was approved on July 12, 2021.
45. The approved Workplace Arrangement Request allowed for additional break time for Plaintiff to use during the day, and was to be put in place for ninety (90) days.
46. Despite being aware of Plaintiff's medical condition, Human Resources unnecessarily opened an investigation into Plaintiff's need for additional bathroom breaks before providing and approving the Workplace Arrangement Request.
47. Moreover, Defendant terminated Plaintiff's employment unlawfully, has his Workplace Arrangement accommodation was not to expire until October 10, 2021.
48. Therefore, Plaintiff was a member of the ADA's protected class as his medical condition of IBS meets that definition; he suffered adverse employment action as his employment was terminated; at the time of his termination, he was performing at a level that met his employer's legitimate expectations, based on his last performance review; and the adverse employment action took place while Plaintiff was operating under a Workplace Arrangement accommodation.

## SECOND CLAIM FOR RELIEF

(*ADA Retaliation*)

49. The allegations set forth in paragraph one through forty-seven are realleged and incorporated by reference as if fully set forth herein.
50. The ADA protects against discrimination against an individual who engages in

protected opposition or participation activity. *See Jacobs v. N.C. Administrative Office of the Courts,* 780 F.3d 562, 577 (2015) (citing 42 U.S.C. § 12203(a)).

51. To prevail on a claim of retaliation, a Plaintiff must establish a *prima facie* cause by showing "(1) that he engaged in protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the adverse action and the protected action." *Id.* (citing *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997)).
52. Plaintiff, by filing a Complaint with the EEOC, engaged in protected activity.
53. Defendant was aware of Plaintiff's EEOC complaint, as management was inquiring as to how to terminate Plaintiff based on his EEOC filing.
54. Plaintiff was terminated on August 24, 2021, after a meeting in which he discussed feeling that the actions against him were discrimination.

### THIRD CLAIM FOR RELIEF

(*Attorneys' Fees and Costs*)

55. The allegations set forth in paragraphs one through fifty-three are realleged and incorporated by reference as if fully set forth herein.
56. Pursuant to 42 U.S.C. § 12205, should Plaintiff prevail on his claims for ADA Discrimination and Retaliation, the Court may allow the prevailing party a reasonable attorney's fee, including litigation expenses, and costs.
57. But for the Defendant's conduct alleged herein, Plaintiff would not have incurred the substantial costs of bringing this action.
58. Circumstances are such that should Plaintiff prevail on his ADA Discrimination and Retaliation claims, the Court should award him his reasonable attorneys' fees.

### JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of facts raised by this Complaint.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

A. Order Defendant to make Plaintiff whole by providing appropriate monetary relief in

the amount of two hundred seventy thousand dollars and 00/100 cents, $270,000.00.

B. Order Defendant to make Plaintiff whole by providing compensation for pecuniary losses resulting from the unlawful employment practices described herein;

C. Award Plaintiff his attorney's fees and costs of this action pursuant to 42 U.S.C. § 12205; and

D. Grant such relief as the Court deems necessary and proper in the public interest.

Respectfully submitted this, the 21st day of February, 2022.

MCLAWHORN & RUSSELL, PLLC

By: /s/Benjamin Tyler McLawhorn
Benjamin T. McLawhorn
NC State Bar No. 53821
McLawhorn & Russell, PLLC
5720 Creedmoor Rd., Suite 205
Raleigh, NC 27612
ben@mclawfirmnc.com
Phone: 919-364-8975
Fax: 919-646-4032
*Attorney for Plaintiff*